AO 91 (Rev. 11/11)  Criminal Complaint   (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America<br>v.<br><br>CHASE THOMPSON<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  3:21MJ111 |

FILED
RICHARD W. NAGEL
CLERK OF COURT
3/22/21
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 2021 to March 12, 2021__ in the county of __Montgomery and Greene__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §§ 5841, 5861(d), and 5871 | Receiving or possessing a firearm not registered to him in the National Firearms Registration and Transfer Record |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

TFO Bradley A. Meeker, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__FaceTime__ *(specify reliable electronic means).*

Date:  03/22/2021

City and state:  Dayton, Ohio

_____
*Judge's signature*

U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Bradley A. Meeker, hereinafter referred to as the "Affiant", being duly sworn, deposes as follows:

## INTRODUCTION

1. Your Affiant is a Task Force Officer with the United States Federal Bureau of Investigation (FBI) within the meaning of 21 U.S.C. § 878, that is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 878. The information contained in this Affidavit is either personally known by your Affiant or relayed to him by other law enforcement officers involved in this investigation.

2. Your Affiant is a law enforcement officer and has been employed as such for the past twenty-three years. Since September 2017, your Affiant has been assigned to the FBI Joint Terrorism Task Force (JTTF) as a Task Force Officer (TFO). Since 1997, your Affiant has been employed as a sworn police officer with the City of Dayton, Ohio. From 2004 thru 2017, your Affiant was assigned to various investigative units, to include the Financial Crimes Unit, Homicide Unit, Arson Unit with the Dayton Fire Department and West Pod Detective Unit. Your Affiant joined the Dayton Regional Bomb Squad in April 2014 and became a certified Public Safety Bomb Technician in 2016. Since 2016, your Affiant has attended several advance courses in explosive disposal techniques, alternate disposal techniques for destructive devices, homemade explosives, stabilization of radiological disbursement devices and obtained a certification as a Tactical Bomb Technician. Your Affiant has been involved in previous post-blast investigations, in addition to investigating persons who have built or possessed destructive devices. Your affiant has also participated in the execution of search warrants that resulted in the seizure of energetic powders, fireworks, and other material used in constructing destructive devices.

3. This affidavit is made in support of an application for a federal criminal complaint against **CHASE P. THOMPSON**, for receiving or possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. The facts in this affidavit are submitted for the purpose of establishing probable cause, and do not include every fact known to your Affiant.

## RELEVANT STATUTES

4. The National Firearms Act (NFA), 26 U.S.C. §§ 5801-72, is a taxing scheme regulating the manufacture, sale, and transfer of certain specially dangerous and concealable weapons.

5. Under Title 26, United States Code, Section 5841, the NFA requires the government to maintain a central registry—the National Firearms Registration and Transfer Record—of all "firearms" in the United States which are not under the control of the United States.

6. For purposes of this provision, "firearm" is defined as, among other things, a "destructive device." 26 U.S.C. § 5845(a)(8). In turn, a "destructive device" is defined in 26 U.S.C. § 5845(f) to mean:

> (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

7. Title 26, United States Code, Section 5861(d) prohibits any person from receiving or possessing a "firearm" which is not registered to that person in the National Firearms Registration and Transfer Record. Title 26, United States Code, Section 5871, states that any person who violates this section is subject to imprisonment for up to ten years.

**FACTS ESTABLISHING PROBABLE CAUSE**

8. On March 12, 2021, at approximately 3:41 p.m., officers from the City of Union Police Department (Union PD) responded to 309 Lutz Drive, Union, Ohio, on the report of the resident finding explosive devices. Upon arrival, Officer Justin Brown spoke with homeowner, S.W. and her brother E.H. S.W. reported that she was gathering the items of her ex-boyfriend, **CHASE P. THOMPSON**, that were stored in her garage. S.W. and E.H. unpacked a cat litter tub and, after doing so, realized they had removed what they believed to be three explosive devices. Officer Brown examined the devices and believed them to be explosive in nature. Officer Brown was also told by S.W. that **THOMPSON** was former military and an explosives expert. Officer Brown notified his superiors of the incident and the Dayton Police Department Regional Bomb Squad was requested. Upon requesting the presence of the bomb squad, Union PD reported to your affiant that **THOMPSON** was taken to the Miami Valley North Medical Center on the previous day, March 11, 2021. **THOMPSON** was involuntarily admitted because he made suicidal threats and officers had located a note titled his "last will and test."

9. The Dayton Police Department Regional Bomb Squad arrived on scene and began operations at 309 Lutz Drive. Lt. Jason Hall, Bomb Squad Commander, made a first approach on the devices, which were located on the floor of a one-car garage. Lt. Hall noted three possible devices, a white plastic bag containing rat traps and shot gun shells, and a closed cat litter box. Lt. Hall took x-rays and photographs of these items. After developing the x-rays, technicians confirmed the presence of four possible explosive devices—three on the floor of the garage and one contained in the cat litter box. Lt. Hall returned to the garage and was able to safely remove all devices from the garage, which

2

were placed in the bomb squad's containment vessel and transported to a remote location at the Englewood Metro Park.

10. Three of the devices were removed from the containment vessel and successful render safe procedures were conducted on each device. The following is breakdown of each device's components:

    a. Device 1 consisted of a glass jar wrapped in a rubber membrane. A 1.4g aerial shell (aerial firework) was located inside the jar, with a fuze protruding from the lid of the jar. Metal screws had been placed inside the jar as shrapnel, and several 1.4g fireworks (firecrackers) were also located inside the jar. Additionally, approximately 60 grams of energetic powder was located inside the jar. The entire device was wrapped tightly in black tape.

    b. Device 2 consisted of a glass jar. A 1.4g aerial shell (aerial firework) was located inside the jar, with a fuze protruding from the lid of the jar. Metal screws had been placed inside the jar as shrapnel, and several 1.4g fireworks (firecrackers) were also located inside the jar. Additionally, approximately 173 grams of energetic powder was located inside the jar. Black tape was wrapped tightly around the device.

    c. Device 3 consisted of a cardboard tube capped at both ends, with a rubber membrane wrapped around carboard tube, and a fuze protruding from one end of the tube. Colored stones were located between the cardboard tube and the rubber membrane to serve as shrapnel. Approximately 148 grams of energetic powder and a 1.4g aerial shell (aerial firework) were located inside the tube. Green cord and orange tape were wrapped around the outside of the device.

11. An additional device, Device 4, was rendered safe on March 13, 2021. Device 4 was a tootsie roll tube containing approximately 300 grams of energetic powder, colored stones to serve as shrapnel, and 1.4g fireworks (firecrackers). Device 4 used a modified rat trap and shotgun shell as an initiation source.

12. A Flame Test was conducted on the gray granular energetic powder collected from each of the four devices. This was done by introducing the gray granular energetic powder to an open flame. Each test indicated the powder was energetic. A sample of the gray granular energetic powder was taken from each device for laboratory testing. The remaining bulk amount of powder was disposed of due to safety reasons.

13. Based on training and experience, your Affiant knows that homemade explosive devices are commonly constructed using containment vessels such as glass jars, pipes, fireworks, fuze material, a combustible powder, and small metal or other hard objects intended to serve as shrapnel. Based on training and experience, your Affiant believes the four devices located in the garage of 309 Lutz Drive, Union, Ohio, constitute destructive devices as defined in 26 U.S.C. § 5845(a)(8) and (f), that is, an explosive bomb or similar device, and/or any combination of parts either designed or intended for use in converting any

device into an explosive bomb or similar device and from which such an explosive bomb or similar device may be readily assembled.

14. On or about March 22, 2021, your Affiant was advised by the ATF that a search of the National Firearms Registration and Transfer Record revealed that the devices discussed above were not registered to **THOMPSON**.

15. While bomb squad operations were being conducted at 309 Lutz Drive, law enforcement discovered that **THOMPSON** had been released from the hospital and was actively communicating via text with E.H. in an attempt to retrieve his property from 309 Lutz Drive. Subsequently, **THOMPSON** was located in the city of Dayton and detained by FBI Agents and Dayton Police Officers. **THOMPSON** was then interviewed by FBI Agents. After being advised of his rights, **THOMPSON** admitted to building all four devices found at 309 Lutz Drive. **THOMPSON** was shown photos of the devices and **THOMPSON** confirmed these were the devices he built. **THOMPSON** told agents he built the devices about a year ago while living in Riverside, Ohio. According to **THOMPSON**, the powder in the devices was Tannerite, given to him by a friend. **THOMPSON** admitted to adding the shrapnel, firecrackers and the 1.4g aerial shells.

16. During a subsequent interview, S.W. admitted that she had known the explosive devices had been brought to her house at 309 Lutz Drive by **THOMPSON**. S.W. was told by **THOMPSON** in January 2021 that his (**THOMPSON**'s) house in Xenia, Ohio, was raided by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and that the ATF did not locate the devices at that time. S.W. stated that she went with **THOMPSON** to his house in Xenia and that **THOMPSON** removed the devices in a black tote and transported them to S.W.'s home at 309 Lutz Drive. S.W. stated that she was told by **THOMPSON** that he would dismantle the devices.

17. Your Affiant is aware of an ATF and FBI investigation of **THOMPSON** that occurred in January 2021.

    a. On January 13, 2021, Detective Robert Swihart of the Xenia Police Department (Xenia PD) notified the FBI about an individual in his jurisdiction who reportedly was making bombs. Xenia PD reported that the ex-wife of **THOMPSON** called Xenia PD and reported the possible presence of explosive materials at **THOMPSON**'s residence in Xenia, Ohio. The ex-wife reported that she and **THOMPSON** share a child and that the child had visited **THOMPSON** over Thanksgiving 2020 at **THOMPSON**'s residence in Xenia, Ohio. The ex-wife reported that **THOMPSON** told the child not to go into the shed because there were bombs and Molotov cocktails, and that **THOMPSON** told the child that the military is going to come to everybody's house, so he (**THOMPSON**) made bombs to protect himself.

    b. On January 15, 2021, your Affiant, along with FBI, ATF, and other law enforcement personnel, went to 1055 Reid Avenue, Xenia, Ohio, to contact **THOMPSON**. Contact was made with **THOMPSON** and a consent to search the

    exterior property of 1055 Reid Avenue was obtained. Your Affiant searched two sheds in the backyard of the property. In the shed at the end of the driveway, your Affiant located a homemade pressure plate that had been wrapped in black plastic. The pressure plate consisted of two cut pieces of 2x4 wood with copper wire wrapped around each piece of wood. Two pieces of foam were used to separate the 2x4 wood pieces. Your Affiant spoke with **THOMPSON**, who admitted that it was a pressure plate that he built. **THOMPSON** said it could be hooked to a light or sound machine when someone stepped on it. **THOMPSON** went on to explain he had obtained a skill set in the military and because of what was going on in the country, he wanted to keep his skills sharp.

  c. Your affiant knows, based on training and experience, that pressure plates are often used to set off explosive devices.

18. Based upon the above information, your Affiant submits that there is probable cause to believe that, beginning on a date unknown, but between in or about January 2021 and on or about March 12, 2021, in the Southern District of Ohio, **CHASE P. THOMPSON**, knowingly possessed a firearm, as defined Title 26, United States Code, Section 5845 (a)(8) and (f), specifically, a destructive device, which was not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, Unites States Code, Sections 5841, 5861(d), and 5871.

_____
Bradley A. Meeker, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this 22nd day of March 2021.

_____
Sharon L. Ovington
United States Magistrate Judge

5